Gardiner, J.
When this cause under the title of Constantine v. Van Winkle was before the court for the correction of errors, two questions were adjudicated, first that the deed of John Van Winkle and Jane, his wife, to Jacob Van Winkle of the 5th of May, 1760, was in form sufficient to convey all the right, title and interest of the grantors; and second, that it was valid and operative, without the acknowledgment of the wife ,to bind her and of course those subsequently claiming under her. It has been said that the copy of the deed submitted to the court of errors was different from the one produced before us in this, that the former contained in the covenant for quiet enjoyment, the words “ grant and grant,” instead of the phrase “ covenant and grant,” found in the latter. There are two answers to this suggestion: First, if there was a mistake in the copy before the court of errors, in any matter material, it must have been known to the plaintiff or his counsel, and should have been then corrected or noticed; and that in the absence of all evidence upon the subject, we must presume that plaintiff adopted all requisite measures to protect his own interest. Or, second, if the mistake was wholly immaterial, and of this I have no doubt, no correction was necessary; and as the plaintiff could not have been prejudiced in that court, he should not derive a benefit from the error in this.
*426 Again, it is argued that the decision in the court of errors is not conclusive upon the question of acknowledgment, because it was made upon the erroneous supposition, that the laws known as the Duke’s Laws, established as early as 1665, and the acts of 1683 and 1684 were repealed, while in fact they were all in force in 1760, the date of the deed in question. It may be answered to this view, first, that if the supposition is well founded, the court for the correction of errors were mistaken as to the law, and this reason might be assigned in every case where the unsuccessful party sought to review an adjudication pronounced upon deliberation and after a full argument.
We do not mean to be understood there can be no case in which an error in the judgment of the court of last resort, arising from a misapprehension upon the part of the court and counsel as to the existence of a statute, would not be corrected in the same cause, by the same court or those who had succeeded to its authority.
But the error must be manifest; not the mere adoption of an opinion long prevalent, which had been sanctioned by the courts and acquiesced in by the profession, and which had to some extent become a rule of property.
It is only necessary to refer to the facts, that the laws now relied upon as having been overlooked, are not found in any edition of the Colonial Laws, ^and that in Jackson v. Gilchrist (15 J. R., 89, decided in 1818), it was held that, so late as 1711, there was no charter or statute regulation on the subject of acknowledgments by femes covert, to demonstrate that this case does not fulfill the conditions above suggested.
Again, the documentary evidence said to have been discovered since this cause was before the court for the correction of errors, has led me to the conclusion that the court was fully justified in adopting the prevalent opinion that those laws were not in existence when this deed was executed. In the first place, these laws are utterly inconsistent with each other, if with the appellant, we suppose that they *427 all were intended to include conveyances by deed executed by married women.
The Dulce's Laws of 1665 require the grant to be acknowledged before a justice of the peace and recorded, to render it effectual in the cases there specified. The act of 1683 provides that no estate of a feme covert should be conveyed but by deed acknowledged in a court of record, the woman being secretly examined. At the same session the legislative assembly enacted that no grants should be of any validity, unless acknowledged or proved before a justice and recorded. The act of 1684 required delivery of possession of a part or the whole of the premises, and a deed acknowledged and recorded as directed by the act of 1683, within one year, to give validity to the conveyance. Married women, it will be perceived, are not alluded to in terms, except in the act of 1683. The several ordinances, it will be perceived, are restrictive, not enabling in their character. The laws of 1665 and 1684, cannot be applied to married women, except upon the hypothesis that they could previously alienate their real estate in the same manner as other grantors; and the phraseology of the charter of liberties, restricting future conveyances, implies the same thing. That this custom would sanction this conveyance, especially since the act of 1771, was held in this case in the court of error's. The appellant is bound to show the usage modified or abrogated by the existence and provisions of-some one of the laws first above mentioned. Now in 1685, after the Duke of York became King of England, the charter of liberties was disallowed; and in the instruction to Governor Dongan, it was provided that “ the other statutes and ordinances, already made within our province of New-York, shall be in full.force, so far as they do not in any wise contradict, impeach or derogate from the commission, or the instructions accompanying it, until you shall, with the advice of our council, pass other laws in our name, which you are to do with all convenient speed.” No ordinances were to be continued, except such as did not *428 in any wise contradict at or derogate from the instructions, &c. Now by these instructions, a provision in the charter of liberties upon the subject of acknowledgments in courts of record, by married women, was disallowed. It was the only act in which femes covert were expressly mentioned, and one which, in its provisions, approached much nearer to the common law of England, than the ordinances of 1665 or 1684. Would not the continuance of these ordinances “ impeach, or in some way contradict ” instructions which expressly disallowed an act upon the same subject and were in consonance with the laws of the mother country ? Accordingly we find that in 1689, after the accession of William and Mary, the first act of the assembly convened by the new governor was to declare that all laws consented to by the general assembly under James, Duke of York, and. the liberties and franchises therein contained, not being observed and ratified by his royal highness and the late king, are null and void and of none effect.” This was not, as the counsel for the plaintiff seems to suppose, intended as a repeal of existing laws, but as a statement of the fact that they had been disallowed or discontinued by the late duke and king, and were not therefore binding upon the people of the colony. This unanimous declaration by the representative of the people, in harmony, as we have seen, with the instructions of 1685, is quite as likely to be correct as the hypothesis now brought forward, founded upon documents recently discovered. Nor was this all. In May, 1691, the same legislature passed an act, known as the bill of rights, containing a provision that no estate of a feme covert should be conveyed but by deed acknowledged in a court of record, on secret examination.
According to the views of the counsel of the plaintiff, there were two acts in force at this time on this same subject, to which a third was added, without the slightest allusion to the former. It is obvious, therefore, that the legislature of 1691 not only declared by resolution, but *429 legislated upon the assumption, that the laws of 1665, 1683 and 1684, were not in force. This disposes of the criticism, that the resolution was the act of a single branch of the legislature. The enactment of 1691 cannot be accounted for, except upon the supposition that the council and governor concurred with the assembly in opinion. It was said that the act of 1710 was a recognition of the laws above mentioned. If so, which of them? The act of 1684, required the acknowledgment to be made before a judge of the oyer and terminer : that of 1683 before a justice of the peace; that of 1665 before a justice or superior officer. And the statute of 1710 merely prescribes that the deed being “ duly acknowledged and recorded, shall be evidence.” Nothing is said of the authority to take the acknowledgment, whether it was derived from an existing usage, or an existing statute. The strong probability is, that it depended on custom; because thirteen years afterwards the legislature undertook to regulate the mode in which acknowledgments should be taken, in order to make the deeds or the record of them evidence. But neither of the acts last mentioned, make an acknowledgment necessary to the validity of a grant. The implication from the language is strong, if not necessary, that it was not essential. The last act refers in terms to all deeds, whether acknowledged or not. The evidence derived from the mode in which deeds were acknowledged, is of little weight. For example, the records from 1694 to 1698 show three hundred and ninety-nine deeds recorded, and not one of these acknowledged in the manner prescribed by the colonial act of 1691, which, in substance, re-enacted the charter of liberties. During the interval above mentioned, this act was in force, according to the views of the plaintiff, until repealed by the king, in council, 1697.
The next is the act to confirm certain ancient conveyances, passed in 1771. This act recites the practice to record deeds upon acknowledgment by the grantors before certain *430 officers enumerated, and that lands were held under deeds of femes covert, not acknowledged in manner aforesaid. The act then proceeds to confirm such conveyances, and directs as to the mode of conveyance by married women thereafter. This law received a construction in this case when before the court of errors, and was held, in all the reported opinions, to include the case of deeds executed but not acknowledged in any manner by a feme covert. I have thus glanced at the evidence of the law referred to by the plaintiffs, and so far from establishing a clear mistake by the court, in Constantine v. Van Winkle, as to the existence of certain laws, it proves by the production of the restrictions under which the governor and council acted, that the supposition of the court of grrors was well founded : that there was no law in 1760, making the acknowledgment of Jane Van .Winkle essential to the validity of the deed then executed by her: that the usage recognized by the act of 1771, and which was said in the case of Jackson v. Gilchrist (15 J. R., 112) to be the only authority for the acknowledgment so late as 1711, prevailed when this deed was executed and authorized a conveyance by the wife and the husband, without any acknowledgment whatever.
The other questions raised were satisfactorily disposed of by the court, and I concur in the reasoning and the conclusions of the learned judge who pronounced the opinion.
All the judges concurred except Morse, J., who gave no opinion.
Judgment affirmed.